```
                UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION
```

SHUNDA STAMPLEY                                           PLAINTIFF

VERSUS                          CIVIL ACTION NO. 5:08cv197-DCB-JMR

FRED'S STORES OF MISSISSIPPI, INC.                        DEFENDANT

## OPINION AND ORDER

This matter comes before the Court on the defendant's Motion for Summary Judgment [**docket entry no. 42**]. Having carefully considered the Motion, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND AND PROCEDURAL HISTORY

The plaintiff in this case is Shunda Stampley ("plaintiff" or "Stampley"). Fred's Stores of Mississippi, Inc. ("defendant" or "Fred's") is the sole defendant. The instant case arises out of injuries allegedly sustained by the plaintiff when she was hit by one or more boxes of file folders which fell from a shelf in the defendant's store in Natchez, Mississippi.

On July 30, 2004, the plaintiff and her two children were shopping for file folders and other school supplies in the defendant's store in Natchez, Mississippi. The plaintiff testified that she was on the aisle shopping for only "a minute or two" before the boxes fell on her. (Pl.'s Depo. at 111). She testified

that other customers were also getting folders out of the boxes when she entered the aisle. (Pl.'s Depo. at 34). Although she cannot recall with precision how the folders were displayed, the plaintiff generally describes the file folder display as boxes of folders stacked on top of each other. The plaintiff's daughter testified that some of the boxes had been cut open in order that the folders could be removed and others remained unopened. (A. Stampley depo. at 9). The plaintiff does not recall how high the boxes were stacked, but she does remember that some boxes were above eye level. She cannot remember if the boxes that fell were stacked above her head.

The plaintiff stated that she took some file folders from the bottom shelf and placed them into her shopping cart. As she was turning to retrieve some additional folders from the shelf, the boxes containing the file folders fell from the shelf onto the plaintiff, striking the right side of her face and the upper right side of her body. The plaintiff does not know how many boxes fell. The plaintiff recounts that there was at least one other customer on the aisle at the time the boxes fell. After the boxes fell, the plaintiff notified one of the defendant's employees that the boxes had fallen. According to the plaintiff, she began to experience "pains in [her] head" and "burning stinging" before she left the store. She filed an incident report with a store employee before leaving the store. When the pain began to interfere with her

driving, the plaintiff drove to the emergency room at a nearby hospital. She was evaluated by a doctor there and released the same day.

The plaintiff also testified that she received a call from the store manager the day after the accident. (Pl.'s depo. at 119). He allegedly told her that the boxes were improperly stacked and that the display had been removed. Id. The only other contact the plaintiff had with the defendant was a letter from Fred's thanking her for shopping at the store. The plaintiff admits that she does not know what Fred's could have done to prevent the boxes from falling. She merely states that "they shouldn't have put them up there". (Pl.'s Depo. at 52-53).

According to Demetris Sewell ("Sewell"), the Fred's employee who witnessed the accident, she saw the plaintiff reach in front of her toward the shelf when one box fell and hit her on the head and some others fell and hit her as well. (Sewell depo. at 7). Sewell states that she went to the plaintiff and told her to stay there while Sewell informed the store manager of the situation. Id. Sewell testified that the boxes contained notebook paper and folders and that they were stacked above the plaintiff's head. Id. at 8-9. Sewell stated that the boxes were on shelves when they fell but she did not know how long they had been on the shelves or who put them there. Id. at 9, 12. Sewell testified that the aisles are generally checked daily to make sure that no merchandise is on the

floor, but she was not sure when the area where the accident happened had last been checked. Id. at 10. She was unsure if "zoning", the process of checking each of the areas of the store to make sure it is in order, was done throughout the day as it should have been. Id. She stated that it was against Fred's policy for boxes to be stacked on the shelves as they were but that these were all excess supply in anticipation of the beginning of school. Id. at 22-23. She also said that the boxes were heavy and capable of causing an injury because they were full of notebook paper. Id. at 20.

On May 10, 2007, the plaintiff filed a complaint in the Circuit Court of Adams County, Mississippi, wherein she alleges negligence and gross negligence. The defendants removed the action to this Court on May 8, 2008. On June 15, 2009, the defendant filed the instant motion for summary judgment. The plaintiff responded on July 29, 2009. The motion and all responses thereto now are before the Court.

## II. ANALYSIS

*A. Summary Judgment Standard*

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The non-movant must instead come forward with "specific facts showing that there is a genuine

---

[1] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

5

issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

*B. Negligence Based Upon Business Premises Liability*

Indisputably, the plaintiff was a business invitee on Fred's premises at the time of her injury. Under Mississippi law, a store owner "owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition, and if the operator is aware of a dangerous condition which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition." Munford, Inc. v. Fleming, 597 So. 2d 1282, 1284 (Miss. 1992). Premises liability is not solely based upon proof of an injury, "rather negligence of the business owner must be shown." Almond v. Flying J Gas Co., 957 So. 2d 437, 439 (Miss. Ct. App. 2007). However, a business owner is not the insurer against all injuries suffered by a business invitee that may occur on the premises. Id. To establish premises liability in a negligence action, the plaintiff must prove that: (1) some negligent act of the defendant caused the plaintiff's injury; (2) the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant.

6

Downs v. Choo, 656 So. 2d 84, 86 (Miss. 1995).

Stampley argues that Fred's employees had "actual knowledge of its own practice of cutting holes in boxes so that customers could see the product and select it for purchase." (Pl.'s Mem. in Opp. to Def.'s Summ. J. at 3) Stampley contends that Fred's failure to warn her regarding the hazards of this practice constitutes negligence on behalf of the defendant. The plaintiff produced evidence that the boxes that fell had been cut open. Angela Stampley, the plaintiff's daughter, testified that the boxes that fell were cut with the folders visible for purchase by customers. (A. Stampley depo. at 9). Denise Amacker ("Amacker"), the district manager for Fred's, also testified that Fred's stores often do "case cuts" in overstocked boxes put on display. (Amacker depo. at 97). Additionally, J. Terrence Grisim ("Grisim"), an expert witness for the plaintiff, testified that cutting boxes on the side using "case cuts" and then stacking the boxes destroys the stability of the boxes and is, therefore, unsafe to customers. (Grisim depo. at 43-44).

Viewing the evidence presented in a light most favorable to the non-moving party, the plaintiff has raised a genuine issue of material fact as to whether Fred's had actual knowledge of the dangerous condition presented.

The Mississippi Supreme Court has held that if a plaintiff is unable to prove that a defendant had actual knowledge of a

dangerous condition, then said plaintiff must show "either constructive knowledge or that the dangerous condition was caused by [Fred's] or its employees. <u>Travis v. Wal-Mart Stores, Inc.</u>, 45 Fed. Appx. 323, *1 (5th Cir. 2002)(citing <u>Munford</u>, 597 So.2d at 1284). A business operator has constructive knowledge of a dangerous condition when "based on the length of time that the condition existed, the operator exercising reasonable care should have known of its presence." <u>Drennan v. Kroger Co.</u>, 672 So. 2d 1168, 1170 (Miss. 1996). To show constructive knowledge, the "plaintiff must present specific proof as to the actual relevant length of time" the hazard existed. <u>Jacox v. Circus Circus Mississippi, Inc.</u>, 908 So. 2d 181, 185 (Miss. Ct. App. 2005).

Assuming, arguendo, that the plaintiff has not presented evidence of actual knowledge on behalf of the defendant that a dangerous condition existed, the plaintiff has presented a genuine issue of material fact as to whether Fred's had constructive knowledge that a dangerous condition existed on the premises. Although Stampley did not know how long the boxes had been stacked on the shelf, employee Sewell testified that the boxes were stacked too high and unsafely. (Sewell depo. at 20-23). Sewel said that the boxes were heavy enough to injure a customer. <u>Id.</u> She also testified that since it was a back-to-school sale, all of the overstock was out on the shelves and more people were in the store. <u>Id.</u> at 29. The store manager also called Stampley the day after

8

the accident and said that the boxes were improperly stacked too high and that he had removed them. (Pl.'s depo. at 119). In addition, Fred's has a policy of "cleaning," otherwise known as "zoning," the store regularly through out the day. (Amacker depo. at 17-19). The store manager is responsible for safety in the store and is required to regularly check the store for hazards "all day." Id. at 59, 63.

Thus, viewing the evidence in the light most favorable to the non-moving party, Stampley has raised a genuine issue of material fact as to whether Fred's had either actual or constructive knowledge of the dangerous condition presented. Statements by the store manager and Sewell that they knew and recognized that the boxes were stacked too high, the knowledge of Fred's employees that the store was more active than usual because of the back-to-school sale, and the policy of Fred's to regularly conduct cleaning "all day" combine to create a fact issue as to whether Fred's had either actual or constructive knowledge that a dangerously overstocked shelf existed.

*C. Negligence Based Upon Inadequate Training*

In plaintiff's response to the defendant's motion for summary judgment, Stampley alleges that Fred's failed to properly train its employee's to recognize potential safety hazards. (Pl.'s Res. Opp. Def.'s Mot. Summ. J. at 6). In response, Fred's argues that plaintiff failed to specifically plead this claim in her complaint,

9

and that plaintiff has presented no evidence that Fred's employee's were negligently trained or that additional training would have prevented the accident. (Def.'s Reb. at 4).

First, as to defendant's argument that plaintiff failed to specifically plead in her complaint that Fred's negligently trained its employees and, thus, plaintiff's claim is precluded, Fred's argument fails. Rule 8 provides that a pleading is to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). "There is no requirement that a complaint for an action grounded in negligence specifically state which legal duty a defendant has breached. Garcia v. Excel Corp. 49 F.3d 728, *1, 1995 WL 103350 (5th Cir. 1995). Rather, the rules state that pleadings should be simple and brief using '"nonlegalistic [and] nonjargonistic" statements of a plaintiff's claim."' Id. (citing Fed. R. Civ. Pro. 84; Trevino v. Union Pacific R. Co., 916 F.2d 1230, 1234 (9th Cir. 1990)).

Plaintiff's complaint alleges a general claim of negligence and gross negligence and specifically states:

The Defendant's negligent maintenance of the premises was included, *but was not limited to*, the following:

A.   Negligently display [sic] and merchandising inventory on

10

> shelves without a restraining device which cause Plaintiff to suffer serious painful and permanent injury.
>
> B. Failure to warn Plaintiff and the public generally of the danger of high stacking shelves.
>
> C. Failure to conduct any regular inspections of the premises to identify a danger that was in existence for such a period of time that it should have been discovered and corrected by the exercise of reasonable and ordinary care.
>
> D. Failure to provide reasonable and adequate maintenance or the premises.
>
> E. Failure to display merchandise so that it will not topple when Plaintiff, or any other invitee, using due care attempted to take something form [sic] the top of the rack.

(Pl.'s Complaint at 3)(emphasis added). The complaint clearly states that the defendant's negligent conduct "included, but was not limited to" the several listed claims. Thus, Fred's had sufficient notice that other possible claims of negligence exist. As such, the Court concludes that Fred's argument that plaintiff's claim of negligent training is not pled and, therefore, is precluded, must fail.

Second, Fred's argues that plaintiff has presented no evidence

that defendant's employees were negligently trained or that additional training would have prevented the accident. This argument also fails. Mississippi law specifically incorporates the Restatement (Second) of Agency § 213 which states:

> [a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: (a) in giving improper or ambiguous orders or in failing to make proper regulations; or (b) in the employment of improper persons or instrumentalities in work involving risk or harm to others; (c) in the supervision of the activity; or (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Foradori v. Harris, 523 F.3d 477, 486-87 (5th Cir. 2008)(citing Tillman ex. rel. Migues v. Singletary, 865 So. 2d 350, 353 (Miss. 2003)). Under Mississippi law, it is proper to instruct a jury in a negligence action using § 213 as to a claim of negligent training. See Gamble ex. rel Gamble v. Dollar Gen. Corp., 852 So. 2d 5, 14 (Miss. 2003)(holding that "[b]ased on Dollar General's failure to show any training provided to [its employee], other than handing her a manual, it was proper to allow the jury to consider the issue of negligence for Dollar General's failure to train its

employee"). Furthermore, the Restatement (Second) of Agency § 213 and the Restatement (Second) of Tort § 317[2] may be applied together "in determining the questions of negligence and proximate cause" in an allegation of negligent training of employees. Foradori, 523 F.3d at 488.

In the instant case, the plaintiff has provided evidence that Fred's employees were negligently trained. Sewell testified that she was "basically trained for customer service," so she could not recall any safety training or safety policy even though she had worked for Fred's for one and one-half years. (Sewell depo. at 22). She said that she recalled watching a video that taught customer service and loss prevention, i.e. preventing shoplifting. Id. Sewell could only remember one employee meeting in the one and one-half years that she had worked at Fred's; however, that meeting

---

[2]Section 317 provides: A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
(a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel or the master, and
(b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control. Foradori, 523 F.3d at 488. That is, "a master is under a duty to use reasonable care to control the actions of his servant while the servant is acting outside the scope of his employment to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, *if* the servant is on the master's premises *and* the master knows or should know of the necessity and opportunity for exercising such control. Id.

did not include any training about customer or employee safety. Id. at 23. Amacker testified that all employees are required to go through a day of basic training when they are hired, but she was not sure if they were all trained for a full day. (Amacker depo. at 21, 52). Basic training includes giving them a training manual, watching a 12-15 minute DVD and taking a test on store policies in the manual. Id. at 19-22. She was not aware of any specific safety training, and employees were allowed to take the test multiple times or until they passed. Id. at 24, 58. Fred's does not have a policy regarding how shelves should be stacked nor does it provide safety goals or guidelines to employees. Id. at 26, 59. Amacker stated that it is the store manager's sole responsibility to make sure the store is safe. Id. at 59.

Viewing the evidence presented in a light most favorable to the non-moving party, a genuine issue of material fact exists as to whether Fred's employees were inadequately trained. The testimonies of Sewell and Amacker present triable issues as to whether employees are trained in safety. See Gamble, 852 So. 2d at 14 (stating that only providing a manual and a policy to employees without actual training was evidence of negligent training and a jury instruction regarding negligent training was necessary).

### III. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary

Judgment [**docket entry no. 42**] is **DENIED**.

**SO ORDERED**, this the 1st day of September 2009.

                                           /s David Bramlette

                                         **UNITED STATES DISTRICT JUDGE**